UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

PAULETTE WEDDING                                                    PLAINTIFF

v.                                                      No. 4:24-cv-97-BJB

MADISONVILLE HEALTH &                                             DEFENDANTS
REHABILITATION LLC,
ET AL.

* * * * *

OPINION REGARDING DISMISSAL

In an earlier-filed but still-ongoing lawsuit, Paulette Wedding sued
Madisonville Health & Rehabilitation, her former employer, for alleged labor-law
violations. Then Madisonville counterclaimed for money it said she owed under her
employment contract. Wedding moved to dismiss the counterclaim on the grounds
that the contract was fake, her signature was forged, and Madisonville actually owed
*her* money. But because these disputed factual questions turned on testimony, not
pleadings, the Court denied her motion. That case headed into discovery, where it
remains today—mired in still another discovery dispute.

Undeterred, Wedding filed a second lawsuit advancing similar arguments
under a different banner: she now alleges that Madisonville's counterclaim was itself
unlawful retaliation subject to liability under the Fair Labor Standards Act and the
Kentucky Wages and Hours Act. Precedent governing such "retaliation-by-lawsuit"
claims, however, requires Wedding to show that Madisonville's counterclaim was
factually baseless, legally frivolous, and motivated by retaliatory purpose. To win
this second lawsuit, in other words, she'd effectively have to prove what the first
lawsuit had already rejected: that Madisonville's counterclaim was entirely meritless.
As discussed during a previous hearing and memorialized here, Wedding's arguments
fare no better the second time around.

I. BACKGROUND

A. The First Case: *Wedding I*

This litigation began in April 2024, when Wedding filed a putative collective
action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky
Wages and Hours Act, K.R.S. § 337.275 *et seq.*, against a slew of related defendants.
What united them all, according to Wedding's complaint, was that the defendants ran

a nursing home, Madisonville Health and Rehabilitation LLC, which "failed to pay" its nurses "full overtime rate of pay." No. 4:24-cv-44 ("*Wedding I*") Complaint (DN 1) ¶ 1.[1]

According to Wedding, she worked at Madisonville Health "from February 14, 2023 until February 14, 2024." ¶ 8. For her labors, she received overtime pay based on a "regular rate" of hourly pay, ¶¶ 27–29, which didn't include "sign-on bonus compensation," ¶¶ 77, 79–81; *see also* Bonus Contract (DN 11-1). This, Wedding alleged, violated the FLSA, which requires employers to "includ[e]" bonuses like hers when "calculat[ing] overtime rates of pay." ¶ 76. And Wedding added that Madisonville Health also excluded a 15% pay premium that she received in exchange for opting out of the company's employee health insurance policy. ¶¶ 87–97.[2] Her time with Madisonville Health ended in "termination on February 14, 2024." ¶ 49.

For its part, Madisonville Health answered that it had paid Wedding (and its other employees) in compliance with the law. *Wedding I* Answer (DN 12) at 15. And Madisonville Health—alone among the Defendants—pled a counterclaim against Wedding. Wedding, it alleged, was entitled to a $7,000 sign-on bonus under their contract only if she "remain[ed] employed for one year at the[ir] facility." Amended Counterclaim (DN 12) ¶ 8. But if she left before one year passed, she "had a duty to reimburse Madisonville Health pursuant to the Agreement for the total amount of sign on bonus." ¶ 14. And contrary to Wedding's claim that she was fired on February 14, one year to the day after she started, Madisonville Health pled that she was fired two days earlier, on February 12. ¶ 9. Despite allegedly working for less than one year, "she failed to reimburse Madisonville Health" for $5,250 in bonus installments that she'd already received and so breached her contract. ¶¶ 10, 15. And even if Wedding's failure to reimburse weren't breach of contract, Madisonville pled in the alternative, it should recover the $5,250 "benefit" to prevent Wedding from being "unjustly enriched." ¶ 18.

Wedding, in turn, moved to dismiss the counterclaim (*Wedding I* DN 11), and for judgment on the pleadings with respect to her own claims (*Wedding I* DN 22).

---

[1] In *Wedding I* and here, the parties advance a host of arguments about which defendants—individuals and entities with assorted ownership interests in Madisonville Health—are proper. But all agree that at least Madisonville Health is a proper defendant. And nothing in this opinion turns on—or rules on—any other defendant. Likewise, this opinion takes no position on the question—still outstanding in *Wedding I*—whether Wedding can proceed on behalf of a class and join as defendants other nursing homes associated with the individual defendants. *See Wedding I* Complaint ¶ 17.

[2] Although not relevant here, Wedding also alleged that Madisonville Health made similar missteps with respect to other employees in her position. ¶¶ 111–32.

2

After procedural developments not relevant here, and while discovery disputes raged, the Court denied both motions at a hearing. *See* DN 99. Wedding's claims, the Court held, "rest[ed] on factual matters outside the pleadings"—like "grainy pay stub images" and contract documents not yet in the record—and couldn't be decided without "hear[ing] from a witness" and resolving "factual dispute[s]." Hearing Transcript (DN 102) at 10, 20–21; *see also id.* at 21 ("I've got to see what was the agreed rate of pay.… I need to see a contract."). So too for Madisonville Health's counterclaim. The Court held that this claim turned upon:

1. a factual dispute about when Wedding was fired (and thus whether she reached the alleged one-year threshold to keep her bonus), *id.* at 14;
2. a "contractual ambiguity" about whether the bonus clawback threshold was six months or one year, *id.* at 16; *see also* Motion to Dismiss Counterclaim at 2 ("[T]he contract, as written, is ambiguous regarding whether or not Plaintiff must work for six months or one year [and whether] this ambiguity should be construed against Defendant as the drafter."); and
3. whether any contract provision promised Wedding a sign-on bonus in the first place (and whether Madisonville Health should be judicially estopped from arguing otherwise), Hearing Transcript at 16–18; *see also* Motion to Dismiss Counterclaim at 4.

Because each of these questions turned upon disputed facts, the Court held, Madisonville Health's counterclaim couldn't be dismissed on the pleadings alone.

In response to that decision, Wedding answered the counterclaim (DN 100), maintaining that she:

1. "was employed by Defendant Madisonville Health … until February 14, 2024," Answer to Counterclaim at 1;
2. was "promised … sign-on bonus installments if she worked long enough" but had never "entered into any agreement" with Madisonville Health because she never made any reciprocal promise, *id.* at 3; and
3. never "signed or was shown the document" that Madisonville Health filed and described as their contract, *compare id.*, *with* Bonus Contract (DN 11-1).

Put another way, her pleadings asserted (apparently for the first time) that her apparent signature on the contract Madisonville Health filed was a forgery, that she'd never "even discussed" the clawback provision Madisonville invoked, and that Madisonville had "paid [her] sign-on bonus compensation totaling $5,250 during her employment" as a mere gratuity. Answer to Counterclaim at 4–5.

Discovery in *Wedding I* continues, and neither party has yet moved for summary judgment.

3

## B. This Litigation: *Wedding II*

Rather than litigate these questions in due course, however, Wedding filed this lawsuit. It reiterates the disputed story from *Wedding I*: that she never signed a contract, had no obligation to repay her bonus if she worked less than a year, and worked for a full year anyway. And critically, it alleges that the counterclaim filed by Madisonville Health (the parties dispute whether other Defendants *caused* Madisonville to file the counterclaim[3]) amounted to unlawful retaliation under the FLSA and KWHA. No. 4:24-cv-97 ("*Wedding II*") Complaint (DN 1) ¶¶ 23–35, 69–71.[4]

To bolster this new theory, Wedding pleads some new facts. Now, she says, the record includes *two* documents purporting to be contracts between her and Madisonville Health. ¶¶ 23, 26; *see* Signed Contract (DN 1-3); Form Contract (DN 1-4). But she denies signing either—even though something that purports to be her signature appears on the Signed Contract, ¶¶ 24, 29, and "numerous employees of Madisonville Health had signed" agreements like the Form Contract, ¶ 40. And although "numerous" employees found themselves in the same position as her—paid sign-on bonuses, worked for less than a year, and failed to return the bonuses—Madisonville had never sued any of them. ¶¶ 41–43. Nor had Madisonville asked Wedding to repay *her* bonus until it filed the counterclaim in *Wedding I*. ¶ 45. For these reasons, Wedding says she asked Madisonville to withdraw its counterclaim, ¶¶ 51–59, and threatened by email to sue for retaliation should Madisonville persist, Email from Mark Foster to Matt Eddy (DN 1-5) at 1; *see* Email from Matt Eddy to Mark Foster (DN 1-6) at 1. Yet the company declined. ¶ 65. And in Wedding's eyes, this proves Madisonville Health's retaliatory motive, because they'd discovered in the meantime "that the signature on [the putative contract] may not be [Wedding's] signature." ¶ 64 (quoting Supplemental Response to Motion to Dismiss (DN 1-10) at 1).

Wedding's amended complaint (DN 8) adds still more. Madisonville Health now has admitted (in a late-breaking discovery response in *Wedding I*), she asserts,

---

[3] As in *Wedding I*, this lawsuit names many Defendants—not just Madisonville Health itself, but also persons and entities that allegedly own and control the facility. As in *Wedding I*, moreover, those allegations remain disputed. And as in *Wedding I*, resolution of the motion to dismiss does not depend on (or finally decide) which Defendants are properly before the Court.

[4] To redress this alleged injury, Wedding requested the "damages"—including emotional distress—that she incurred in defending the counterclaim, "liquidated damages in an equal amount," and "punitive damages in an amount sufficient to deter Defendants" from filing similar counterclaims in the future. ¶ 72.

that the signature that appeared to be Wedding's—and that Madisonville had already conceded "may not" be hers—was not, in fact, hers. Amended Complaint ¶ 88; *see also* Supplemental Answers to Requests for Admission (DN 8-1) at 7–8. For its part, Madisonville insisted in the same discovery response that although Wedding had not signed the document in question, she had nevertheless orally agreed to the same terms. *See id.* at 13.

In response, Madisonville moved to dismiss Wedding's retaliation claims (DN 13) for failure to state a claim. One month later, Wedding moved for leave to file a second amended complaint (DN 15). At a hearing, the Court granted the motion to dismiss and denied the motion for leave to amend. DN 20 (hearing order). Consistent with the discussion at that hearing, this opinion memorializes the Court's reasons.

## II. MADISONVILLE'S MOTION TO DISMISS *WEDDING II*

The parties' briefing on this motion to dismiss mainly focuses on *who* is a proper defendant—not *whether* Wedding's first amended complaint states a claim. Wedding argues that the many Defendants named here are all liable for filing the counterclaim. Motion to Dismiss Response (DN 14) at 3–11, 14–17. The Defendants disagree, arguing that no Defendant but Madisonville Health itself counts as an employer under the FLSA and KWHA—meaning no Defendant but Madisonville Health could be liable for retaliation. Motion to Dismiss at 4–15. Wedding counters that Madisonville's arguments on this front wrongly rely on evidence outside the pleadings, Motion to Dismiss Response at 3–6, that the Court should therefore convert the motion to dismiss into a motion for summary judgment under FED. R. CIV. P. 12(d), *id.* at 7, and that Madisonville's ownership- and control-related arguments are wrong in any event, *id.* at 8–9.

The Court need not—and does not—rule on any of this. Whoever is a proper Defendant in this case (or the last one), and notwithstanding the evidence discovered so far in *Wedding I*, Wedding's retaliation claims fail for a more basic reason.

Retaliation claims like Wedding's generally require plaintiffs to satisfy four basic elements. "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). If she makes out a prima facie case, the burden then shifts to her employer "to set forth a legitimate … reason for the adverse … action." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004) (applying *McDonnell Douglas* to FLSA retaliation claim). And last, if the employer carries that burden,

5

the plaintiff can win only by showing "that the defendant's proffered reasons were not its true reasons, but merely a pretext." *Adair*, 452 F.3d at 489.

But pleading and proving a retaliation-by-lawsuit theory is harder because it involves two additional requirements. "[T]he right of access to the courts," the Supreme Court has held, "is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). For that reason, *Bill Johnson's* explained that only "the prosecution of an *improperly motivated* suit lacking a *reasonable basis* constitutes" actionable retaliation in violation of the labor laws. *Id.* at 744 (emphasis added); *cf. Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988) (interpreting the National Labor Relations Act to avoid prohibiting advocacy and arguably violating the First Amendment).[5] Without pleading and proving these two requirements—that Madisonville Health's counterclaim is "both objectively baseless *and* subjectively motivated by an unlawful purpose"—Wedding's retaliation claim can't succeed. *BE & K Construction Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002); *accord Bill Johnson's*, 461 U.S. at 748 ("Retaliatory motive and lack of reasonable basis are both essential.").[6]

And each requirement sets a high bar. To demonstrate "objective baselessness," Wedding must make either of two showings. First, that Madisonville's counterclaim doesn't "presen[t] genuine factual issues," including "the credibility of witnesses or … the proper inferences to be drawn from undisputed facts." *Bill Johnson's*, 461 U.S. at 745. Or second, that the counterclaim turns upon a legal

---

[5] Because the parties focus their briefing on the federal FLSA, the Court does the same. Neither party has suggested that a different result would follow under the KWHA. Indeed, Wedding's counsel seemingly accepted at the hearing that the retaliation-by-lawsuit theory would receive the same analysis under the KWHA or FLSA. So the Court considers both claims under the same rubric.

[6] *Bill Johnson's* involved a government enforcement action, not civil litigation. But the Sixth Circuit has strongly suggested that the rule of *Bill Johnson's* and its progeny—requiring both objective baselessness and subjectively improper motivation—should apply to private retaliation-by-lawsuit labor lawsuits as well. *See Canter v. Disability Network West Michigan*, 2023 WL 5627318, at *5 (6th Cir. Aug. 31, 2023). And a principled distinction between the two contexts is difficult to perceive. After all, the First Amendment's Petition Clause would seem to limit abridgment of court access in either context. *See also BE & K Construction*, 536 U.S. at 537 (Scalia, J., concurring). Other circuits agree. *See, e.g., Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 691–92 (5th Cir. 2010) (requiring plaintiffs to show both elements to prevail on retaliation-by-lawsuit claims). *But see, e.g., Darveau v. Detecon*, 515 F.3d 334, 339 (4th Cir. 2008) (seemingly applying only the traditional four-element retaliation test—not the additional requirements of *Bill Johnson's*—to retaliation-by-litigation claims).

contention that is not "plainly foreclosed as a matter of law or otherwise frivolous"—for Madisonville Health generally has a "right to have genuine … legal questions decided by the … judiciary." *Id.* at 746–47.

Pleading retaliatory motive is difficult too. After all, "every litigant intends harm to his adversary." *BE & K Construction*, 536 U.S. at 534 (quoting *Professional Real Estate Investors v. Columbia Pictures Industries*, 508 U.S. 49, 69 (1993) (Stevens, J., concurring)). And ordinarily, "no action lies against a party for resort to civil courts." *Lucsik v. Board of Education of Brunswick City School District*, 621 F.2d 841, 842 (6th Cir. 1980). So to prevail, it's not enough to show merely "ill will." *BE & K Construction*, 536 U.S. at 534. Wedding must go further and plead facts suggesting that Madisonville's asserted "purpose" in filing the counterclaim—recovering money it's owed—isn't "subjectively genuine." *Id.*

But when it comes to the all-important requirement of retaliatory motive, Wedding's complaint is threadbare. She pleads no facts, beyond a shaky temporal inference, suggesting that *any* of the many Defendants acted with a retaliatory motive. And she fares little better with respect to objective baselessness, where the number of factual disputes in these cases belies the notion that Madisonville's counterclaim is both factually and legally baseless. (To say nothing of the Court's ruling in *Wedding I* that the counterclaim had enough merit to withstand a motion to dismiss.) So without ruling on anything but these two independently dispositive requirements, which Wedding fails to plead regarding any of the Defendants, the Court granted the motion to dismiss.

## A. Wedding Does Not Plausibly Plead Retaliatory Motive

Wedding's complaint offers few facts that even tenuously relate to Madisonville's motives. Her first two pleadings in this case don't address retaliatory motive at all. And her proposed second amended complaint (DN 15-1) merely states that "Defendants' acts in retaliating against Plaintiff by filing the Counterclaim, and thereafter in refusing to withdraw the Counterclaim, were intentional and malicious." ¶ 139. This, of course, is a "labe[l] and conclusio[n]"—not a fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the only putative factual support she adds (also in her proposed second amended complaint) is that Madisonville's position about its relationships with other proposed defendant nursing homes—including legal ownership and corporate structure—has evolved throughout the litigation in *Wedding I*. ¶ 140. But not only is it totally unremarkable for a party to make factual concessions during discovery, the concessions here have no bearing whatsoever on the merits of Madisonville's counterclaim. For instance, that Madisonville Health is legally connected to some other Defendants, or that it uses contracts similar to those used by another facility, might concern whether

7

Madisonville's alleged parent company is liable in *Wedding I*, but has nothing to do with whether Madisonville retaliated against Wedding.

Wedding's only other argument is that the Court should infer retaliatory motive from two other facts: Madisonville has never before sued an employee to claw back a bonus, and it only tried to get Wedding's bonus back after she first sued it. First Amended Complaint ¶¶ 41–45.

Even assuming both allegations are true—as the Court must at this stage— neither novelty nor timing plausibly supports that inference. The whole structure of the Federal Rules of Civil Procedure encourages—and often requires—that litigants air all related grievances in one action. Consistent with that policy, the Rules command that a responsive pleading "must state as a counterclaim any claim that … the pleader has against an opposing party if the claim … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). "[I]n some ways," this rule is "harsh because it forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them." *Bluegrass Hosiery v. Speizman Industries*, 214 F.3d 770, 772 (6th Cir. 2000). But Madisonville Health can hardly be faulted for following it. Its counterclaim that Wedding owed *it* money under her contract was plainly compulsory in an action where Wedding claimed that Madisonville had failed to pay *her* under the very same contract.

For this reason, other district courts have refused to draw the inference that Wedding offers; instead, they've concluded that "a counterclaim prompted by a civil complaint is not … an act of retaliation motivated by a plaintiff's protected conduct." *Perez v. Hyman*, No. 6:22-cv-230, 2023 WL 11892924, at *4 (E.D. Ky. Aug. 15, 2023); *see also Settles v. Malak*, No. 1:20-cv-1631, 2021 WL 4710509, at *14 (N.D. Ohio Oct. 8, 2021) ("Counterclaims, by their very nature, are responsive. Responsive, without more, does not equate to retaliatory."); *cf. Jocke v. City of Medina*, No. 22-3954, 2023 WL 5167326, at *7 (6th Cir. Aug. 11, 2023) ("Whatever the merits of Plaintiffs' claims …, the City did not bring its counterclaim because of Plaintiffs' protected speech, but rather because of Ohio's rules of civil procedure.").

Wedding has advanced no good reason to conclude otherwise. One can imagine "many reasons [why] an employer would not litigate every infraction employees commit," that is, until "after an employee has hauled an employer into court, [when] it is entirely reasonable for the employer to file its claims for minor infractions." *Aday v. Westfield Insurance Co.*, No. 21-3115, 2022 WL 203327, at *14 (6th Cir. Jan. 24, 2022). Especially when those counterclaims would otherwise "be barred in future litigation." *Id.* And even if the employer has never before sued an employee on the same theory. *Id.* Without any other facts, the Court sees no basis to infer a

retaliatory motive on Madisonville's part. This alone warrants dismissing Wedding's retaliation claims.

### B. Wedding Hasn't Shown Madisonville's Counterclaim Lacks Merit

Wedding fares little better when it comes to the second requirement. As the Court's denial of her motion to dismiss in *Wedding I* suggests, *see Wedding I* Motions Hearing Transcript at 14–17—and the ongoing battle in that case corroborates—Madisonville's counterclaim depends on a host of disputed facts.

Wedding starts by attacking Madisonville's position that a contract even existed between her and Madisonville. Second Amended Complaint ¶ 27. That's curious, though, because her complaint in *Wedding I* asserts "a breach of contract." *Wedding I* Complaint ¶ 162; *see also Wedding I* Motions Hearing Transcript at 14 (arguing she and Madisonville Health had a written contract). More fundamentally, Madisonville Health's counterclaim rests on the "genuine … issu[e]" of disputed fact whether a contract existed—which cuts hard against baselessness here. *Bill Johnson's*, 461 U.S. at 745.

This pattern repeats when it comes to Wedding's other suggestions of baselessness. Wedding alleges that even if there were a written contract, she never signed it. But that is—or at least was—a disputed factual issue too. And even if Wedding didn't sign, written terms that she agreed to orally may well bind her. *See, e.g.*, *Dohrman v. Sullivan*, 220 S.W.2d 973, 975–76 (Ky. 1949). Not to mention that Kentucky, like most states, recognizes unwritten contracts under certain circumstances. *See, e.g.*, *Frear v. P.T.A. Industries*, 103 S.W.3d 99, 105 (Ky. 2003).[7]

Wedding next asserts that even if she made a contract with Madisonville Health, that contract says nothing about clawbacks. But this, too, is hotly disputed in *Wedding I*. As is her claim that a one-year clawback provision wouldn't apply to her because she worked for 365 days rather than 363. So too her facially dubious claim that Madisonville Health has *never* made an oral contract with anyone. Indeed, in *Wedding I*, Wedding conceded that the factual and interpretive questions posed by the contract (or contracts) couldn't be resolved without hearing testimony. *See Wedding I* Motions Hearing Transcript at 16–17. The point is not that Madisonville will necessarily *win* on any of these issues. It may; it may not. The point is that because each depends upon a genuine factual dispute, the counterclaim isn't

---

[7] Resisting this conclusion, Wedding asserts that Madisonville can't rely on an oral-contract theory because its complaint mentions a written contract. *See* Motion to Dismiss Response at 11 (citing DN 1-2 ¶¶ 6–8). But Madisonville's counterclaim isn't so narrow. It just alleges that the parties "entered into an agreement"—no written-only qualification. *Wedding I* Amended Counterclaim ¶ 6.

baseless—whether or not it ultimately succeeds.  *See BE & K Construction*, 536 U.S. at 532.  Wedding's pleadings consistently miss this crucial point—arguing that she'll be proven right on the merits without addressing why Madisonville's counterarguments shouldn't even be heard.[8]

Last, Wedding tries a bank shot.  Even if Madisonville's counterclaim was not frivolous when it was filed, she says, intervening developments have made it frivolous—and thus potentially retaliatory.  Motion to Dismiss Response at 13.  What development does Wedding identify?  During *Wedding I* discovery, she points out, Madisonville withdrew its position that Wedding had signed the Signed Contract, DN 1-3.  *Wedding II* Amended Complaint ¶¶ 86–88; *Wedding II* Proposed Second Amended Complaint ¶¶ 138–42.  But as explained, this change of position—not all that strange from a party embroiled in complex discovery—doesn't scuttle the counterclaim.  Whether Wedding signed that particular document has no bearing on whether she signed another one; whether she signed any document has no bearing on whether the terms of the parties' agreement were reduced to writing; whether the parties made any written agreement at all has no bearing on whether they made an enforceable contract; and whether they labored under a contract has no bearing on Madisonville's quasi-contract claim.  So even assuming Wedding's unsupported

---

[8] In any event, Madisonville's counterclaim isn't even limited to breach; it alternatively pleads unjust enrichment under a quasi-contract theory.  *Wedding I* Amended Counterclaim ¶¶ 16–18.  And on that point, Wedding never disputes that she "accepted and retained" sign-on bonus payments, *id.* ¶ 18; she merely disputes (as a factual matter, apparently) whether she should keep the past payments and one additional installment she claims is due, *see Wedding I* Complaint ¶ 162 (demanding the last installment); *Wedding II* First Amended Complaint ¶ 17 ("[T]he sign-on bonus compensation was partially paid.").

Wedding retorts that Madisonville's quasi-contract theory is not factually but *legally* frivolous on the ground that this "claim, under Kentucky law, is only available where there is *no contract*."  Motion to Dismiss Response at 12.  This objection makes little sense given her allegation that she never made a contract.  Second Amended Complaint ¶ 27.  "No Kentucky case has ever required repayment," she continues, of "wages the worker had earned and been paid for her work."  Motion to Dismiss Response at 13.  But the point of the counterclaim is that she *didn't* earn the bonus (not wages) because it was conditioned on working at the facility for one full year.  And of course, Kentucky law allows an employer to recover funds paid to, and wrongfully retained by, its employee.  *See, e.g., Hunt v. North American Stainless*, 482 S.W.3d 796, 798 (Ky. Ct. App. 2016).  "[I]f there is any realistic chance that the plaintiff's legal theory might be adopted," the *Bill Johnson's* Court explained, the claim is not legally baseless.  461 U.S. at 747.  That standard exposes "plainly foreclosed" theories—not novel claims—to potential liability.  *Id.*

10

contention that a nonretaliatory counterclaim can become retaliatory midway through discovery, that premise would do no work here.

In response to these problems, Wedding invites the Court to ignore the patent factual disputes that the counterclaim has engendered in *Wedding I*. Instead, she suggests, the Court should rely on her bare assertion in the *Wedding II* complaint that there are no such disputes. It's true, of course, that the Court must accept all of Wedding's "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); FED. R. CIV. P. 10(c). Wedding's complaints in this case repeatedly characterize, and attach documents from, the proceedings in *Wedding I*. Her whole claim is that that case involves no nonfrivolous factual nor legal disputes. And sensibly enough, Madisonville counters with more documents from *Wedding I* that "rebut the complaint's misleading statements." *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 466 (6th Cir. 2014). It's allowed to do that. And in any event, the Court may on its own "consider public records for the truth of statements contained within them," without "convert[ing] the motion into one for summary judgment," if those records "cannot reasonably be questioned." *Electronic Merchant Systems v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (quotation marks omitted). Records of judicial proceedings, of course, meet that mark. *Id.* And for good reason. It would be passing strange, after all, to let Wedding use the motion-to-dismiss standard to force the Court to ignore what it has already decided in her other, ongoing case—the very subject of this retaliation litigation.

\*

Every day, litigants (perhaps including Madisonville) press losing claims. But few are "plainly foreclosed … or otherwise frivolous." *Bill Johnson's*, 461 U.S. at 747. Madisonville's counterclaim doesn't fit that description—on the facts or the law. And that's reason enough to dismiss Wedding's retaliation claims. Whatever the result on that prong of Wedding's claim, the Court granted Madisonville's motion to dismiss for the independent reason that Wedding pleads no facts suggesting retaliatory motive.

### III. WEDDING'S MOTION TO AMEND

So far, the Court has considered Madisonville's motion to dismiss in light of the allegations Wedding adds in her proposed second amended complaint. As explained, they don't move the needle. They declare more overtly which of Madisonville's claims Wedding thinks are frivolous. *See, e.g.*, ¶¶ 48, 53, 132. But they add no "factual content" supporting a "reasonable inference" that Madisonville

retaliated. *Iqbal*, 556 U.S. at 678. And they add more detail about Wedding's view of the corporate intricacies connecting Madisonville Health & Rehabilitation LLC with other parties and nonparties. *See, e.g.*, ¶¶ 93–135. But as explained, the Court needn't and doesn't rule on those party-specific allegations because Wedding's complaint fails on the merits as to *any* possible defendant. On every point that the Court decides in granting Madisonville's motion to dismiss, Wedding's proposed amendment is futile. For that reason, the Court denied her motion for leave to amend. *See, e.g.*, *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

*  *  *

For the reasons stated above, the Court granted Madisonville's motion to dismiss (DN 13) and denied Wedding's motion for leave to amend (DN 15). A separate final judgment will follow forthwith. *See* FED. R. CIV. P. 58. Because final judgment has not yet been entered in this case, but will be entered promptly after this opinion is docketed, the Court denies as moot Wedding's motion that the Court amend the judgment (DN 21).

Benjamin Beaton, District Judge

United States District Court

October 15, 2025

12